**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **STEVE CARLISLE and JOHN** | ) | |
| **BUSZKIEWICZ, individually and** | ) | |
| **d/b/a Klear Kut Excavating and d/b/a** | ) | |
| **Klear Kut Excavating, Inc.,** | ) | |
| **TEAM EXCAVATING, INC.,** | ) | |
| **individually and d/b/a Klear Kut** | ) | |
| **Excavating and d/b/a Klear Kut** | ) | |
| **Excavating, Inc., and JONAS** | ) | |
| **KRAMER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:06 CV 710** |
| | ) | |
| **DEERE & COMPANY d/b/a** | ) | |
| **Deere Power Systems Group,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION and ORDER**

Before this court are defendant Deere & Company's motion for summary

judgment (DE # 19) and motion to strike (DE # 38). Plaintiffs Steve Carlisle, John

Buszkiewicz, Team Excavating, Inc., and Jonas Kramer have responded to both motions

and defendant has replied. Since this matter can be resolved without addressing the

evidentiary claims raised in defendant's motion to strike, that motion is **DISMISSED** as

moot. For the reasons explained below, defendant's motion for summary judgment is

**GRANTED**.

**I. BACKGROUND**

This lawsuit revolves around a wood-chipper engine. Specifically, a John Deere

engine, manufactured by defendant, that was placed inside a wood-chipper, which

plaintiffs purchased secondhand. (DE # 20 at 3.) The John Deere engine came with a warranty, which the wood-chipper's first owners lengthened by purchasing an extended warranty from defendant. (DE # 20 at 6-7.) When plaintiffs bought the wood-chipper, the extended warranty on the engine transferred from the seller to them, specifically to their business "Klear Kut Excavating." (*Id.* at 9.) The extended warranty guaranteed that defendant would pay for any engine repairs stemming from defects, materials or workmanship. (DE # 19-3 at 2; DE # 20 at 7.)

Unfortunately, the wood-chipper's devilish name— the "Brush Bandit Beast"— proved all too apt. (DE # 32 at 3-6.) The wood-chipper didn't work as desired, not for its first owners, and definitely not for plaintiffs. It seemed underpowered, and didn't mulch branches, logs and shrubs at the rate plaintiffs wanted. (*Id.* at 5.) The root of the wood-chipper's problems went undetected for years, despite plaintiffs' and the previous owners' repeated efforts to have it fixed. (*Id.* at 5-6.) In fact, several times plaintiffs had the wood-chipper examined under the extended warranty at defendant's authorized service outlets, but nothing seemed to help. (*Id.* at 5.) Simply put, no one could figure out why the wood-chipper was underpowered. Then, finally, an employee of the wood-chipper's first owner suggested the correct remedy. (*Id.* at 5-6.)

A device on the wood-chipper called a Performance Programming Connector (PPC) had been engaged improperly. (DE # 32 at 6-7.) The PPC, when wired in a particular way, governed the engine, preventing it from going above a certain level of RPMs and horsepower, similar to the governor that prevents some rental trucks from

2

going faster than 65 miles per hour. (DE # 20 at 3-5; DE # 33-5 at 3.) Essentially, the PPC had been configured in a way that prevented the wood-chipper's engine from running as quickly and powerfully as it needed to effectively power the wood-chipper. With the PPC configured correctly, the engine performed as required. (DE # 32 at 6-7.)

But by the time plaintiffs corrected the problem, their business was too far gone. Their operation folded, and they brought suit against defendant, who manufactured the engine. (DE # 32 at 10.) Plaintiffs specifically alleged one "breach of warranty" count, claiming that the engine failed to adequately power the wood-chipper, that defendant failed to fix the power problem, and that this failure breached the engine's extended warranty. (DE # 1 at 4-5.)

Defendant moved for summary judgment, raising a bevy of claims, including that (A) plaintiffs have no standing because the extended warranty was signed over to Klear Kut Excavating, a partnership run by plaintiffs that is not a party to this action; (B) the extended warranty only covers the engine and its parts, not its installation or use; (C) defendant did not configure the PPC and thus was not responsible for the wood-chipper's poor performance; and (D) the extended warranty limits the damages plaintiffs can claim. (DE # 20.)

After plaintiffs responded, contesting all of these assertions, and defendant replied, defendant filed a motion to strike several exhibits attached to plaintiffs' response to summary judgment. (DE # 38.) However, as noted previously, this case can be disposed of without resolving the motion to strike.

3

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. PROC. 56(c)). Once the moving party has met its burden, the nonmovant may not rest upon mere allegations. When confronted with a motion for summary judgment, "[a] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *East-Miller v. Lake County Highway Dep't.*, 421 F.3d 558, 561 (7th Cir. 2005) (citing *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988)). When considering a motion for summary judgment, the court views the record and all reasonable inferences in a light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

## III. ANALYSIS

Defendant makes several claims in his motions to strike and for summary judgment, but this case turns on one key issue: whether plaintiff can bring a breach of warranty claim against defendant.

Defendant argues that the engine's extended warranty only covers the engine, its parts and operation, not the wood-chipper itself, and that a disclaimer in the extended warranty specifically excluded any implied warranties. (DE # 20 at 10-14; DE # 37 at 5-8.) Plaintiffs' argument in response is unclear. (DE # 31 at 14-21.) They do not specifically discuss whether the extended warranty's disclaimer excluded any implied warranties, but instead allege that defendants knew that the PPC was incorrectly wired for the wood-chipper's use. (*See* DE # 31 at 15-17.) Plaintiffs also claim that the court should regard the PPC's improper configuration as a defect with the engine itself. (*See id.* at 18-20.) In addition, plaintiffs argue that disclaimers are to be "strictly construed" against the disclaiming party, and that enforcing the engine's disclaimer "would effectively leave the injured [p]laintiffs without a remedy." (DE # 31 at 20-21.)

The extended warranty reads, in relevant part:

The extended warrant applies to the engine and to components and accessories sold by John Deere which bear its name (all of which are referred to in this warranty as ("engines").

**A. WARRANTY AND DURATION.** All parts of a new John Deere engine which is subject to this Extended Warranty, and which as delivered to the original retail purchaser, are defective in materials or workmanship will be repaired or replaced, as John Deere elects, without charge . . .

(DE # 19-3 at 2.)

5

**D. PURCHASER'S RESPONSIBILITIES** . . .

Consequences of negligence, misuse, or accident involving the engine, or improper application, installation or storage of the engine. Consequences of any modification or alteration of the engine not approved by John Deere, including, but not limited to, tampering with fuel and air delivery systems . . . .

**E. NO REPRESENTATIONS OR IMPLIED WARRANTY/REMEDY LIMITATION.** Where permitted by law, neither John Deere, nor any company affiliated with it makes any guaranties, warranties, conditions, representations or promises, express or implied, oral or written, as to the non-occurrence of any defect or the quality of performance of its engines other than those set forth herein and DOES NOT MAKE ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS otherwise provided for in the Uniform Commercial Code or required by any Sale of Goods Act or any other statute.

(DE # 19-2 at 32.)

Thus, the extended warranty covers the engine and its components, and warrants that any defects in the engine's materials or workmanship will be fixed free of charge. (DE # 19-3 at 2.) The warranty also explains that the engine's purchaser is responsible for any issues regarding the engine's "application" or "installation." (DE # 19-2 at 32.) Then, the warranty limits its coverage to just the guarantees listed, stating, in all caps, that the warranty does not make any "implied warranties or conditions of merchantability or fitness." (*Id.*)

Plaintiffs do not specify exactly how defendant breached the warranty. (*See* DE # 1 at 5-6; DE # 31 at 14-21.) At one point, plaintiffs claim that "the failure of the Defendant's engine to properly operate the Plaintiffs' Brush Bandit *is* the defect in materials and workmanship." (DE # 31 at 19-20.) Thus, plaintiffs appear to allege that,

6

by not recognizing that the wood-chipper's PPC was preventing the engine from operating at full power, defendant somehow breached its warranty on the engine. This claim is baseless. The extended warranty guaranteed the workmanship and materials of *the engine*, and specifically did not cover how the engine was installed. (*See* DE # 19-2 at 32; DE # 19-3 at 2.) And neither party contests that the extended warranty in evidence (*see id.*) is accurate, or that plaintiffs' problem with the wood-chipper was due to the wiring on the PPC, which, although attached to the engine, was *not* part of the engine. To be plain, there is no evidence whatsoever to support plaintiffs' apparent assertion that the incorrect configuration of the wood-chipper's PPC constituted a defect with the engine itself. The warranty covered the engine. The engine worked properly. The way in which the wood-chipper's PPC was configured, something which happened completely independent of defendant manufacturing and selling the engine, was the problem. The court rejects plaintiffs' claim that the PPC's improper configuration breached the specific terms of the extended warranty.

To give plaintiffs the benefit of the doubt, this court will also assume that plaintiffs alleged that defendant breached an implied warranty, such as an implied warranty of merchantability, *see* Ind. Code § 26-1-2-314 (2007), or an implied warranty of fitness for a particular purpose, *see* Ind. Code § 21-1-2-315 (2007). In Indiana, such implied warranties attach to any sale, unless the seller specifically excludes or disclaims them, *see id.*; Ind. Code § 26-1-2-314 , which defendant attempted to do (*see* DE # 19-2 at 32). In its motion for summary judgment, defendant alleges that the language in the

extended warranty was legally sufficient to exclude any implied warranties. (DE # 20 at

12-14.) As noted above, plaintiff fails to respond to this argument.

Indiana Code § 26-1-2-316 explains what a seller must do in order to exclude or

modify implied warranties under Indiana law. That provision states, in relevant part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of
> merchantability or any part of it the language must mention
> merchantability and in case of a writing must be conspicuous, and to
> exclude or modify any implied warranty of fitness the exclusion must be
> by a writing and conspicuous. Language to exclude all implied warranties
> of fitness is sufficient if it states, for example, that "There are no
> warranties which extend beyond the description on the face hereof."

Ind. Code § 26-1-2-316(2) (2007)

Thus, IC § 26-1-2-316(2) specifies what defendant had to do to exclude any

implied warranties.  That subsection mandates that any exclusion must (A) be in

writing and (B) be conspicuous, and if excluding the implied warranty of

merchantability, must (C) use the term "merchantability." Ind. Code § 26-1-2-316(2).

Defendant's exclusion is certainly in writing, and does use the term

"merchantability." (*See* DE # 19-2 at 32.) As far as being conspicuous, the key portion of

the exclusion is written in capital letters. (*See id.*) Furthermore, this section of capital

letters stands out, since the only other words in all caps on this page of the warranty are

the section headings. (*See id.*) And finally, the exclusion is located under a bolded and

capitalized section heading that reads "no representations or implied

warranty/remedy." (*Id.*)

8

Furthermore, the exclusion in the extended warranty compares favorably to other Indiana cases where courts upheld sellers' implied warranty disclaimers. *See Travel Craft, Inc. v. Wilhelm Mende GmbH & Co.*, 552 N.E. 2d 443, 444-45 (Ind. 1990) (implied warranties effectively disclaimed by stating "there are no other warranties, express or implied"); *Roberts v. Homelite Div. of Textron, Inc.*, 649 F. Supp. 1440, 1444 (N.D. Ind. 1986) (disclaimer was conspicuous and disclaimed implied warranty of fitness when written in large black type and under heading "limitation of warranty"); *cf. Jones v. Abriani*, 350 N.E. 2d 635, 645 (Ind. App. Ct. 1976) (underlined disclaimer not conspicuous when most of surrounding text was also underlined). Thus, defendant's attempt to disclaim any implied warranties complied with Indiana law. Plaintiffs cannot base their case on the breach of any implied warranties.

Since plaintiffs have no claim under the warranty itself, and any implied warranties were properly disclaimed, plaintiffs sole claim of "breach of warranty" must fail. What happened to plaintiffs' business was truly unfortunate, but defendant cannot be held liable for breaching the extended warranty and properly disclaimed any implied warranties. Given that the engine defendant manufactured worked properly and plaintiffs' injury stemmed from the inappropriate configuration of the wood-chipper's PPC, the court must question plaintiffs' strategy of bringing suit against defendant at all.

**IV. CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (DE # 19) is **GRANTED**. The associated motion for a hearing (DE # 21) is **DENIED**. Defendant's motion to strike (DE # 38) is **DISMISSED** as moot. The clerk is to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendant Deere & Company and against plaintiffs Steve Carlisle, John Buszkiewicz, Team Excavating, Inc., and Jonas Kramer, who shall take nothing by way of their complaint.

**SO ORDERED.**

**DATE:** May 22, 2008

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT